TERRY *v.* STATE

[No. 347, September Term, 1964.]

*Decided June 25, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and BARNES, JJ.

*William O. Goldstein,* with whom was *Roland Walker* on the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.,* and *Morton Sachs, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

As far as this Court is concerned, this appeal is another frivolous one brought by a convicted and self-acknowledged

recidivistic criminal, the costs of which (required by authority higher than this Court) must be borne by the State of Maryland.

Appellant was convicted of robbery in the Criminal Court of Baltimore. He raises several questions, all of which will be answered, but not in the sequence they are set forth in his brief.

The first two which we shall consider are of such paltry significance that his court-appointed counsel, quite rightfully in our opinion, pointed out that they were included in the brief only upon the insistence of the appellant. The first one reads: "Were the defendant's legal and constitutional rights violated by an unlawful search and seizure?" The question was not raised below, and, therefore, is not properly before us. Maryland Rule 885. In addition, an examination of the trial record discloses no allusion to a search of appellant or any seizure of his property. No tangible evidence was offered at the trial. It is obvious that the claim is utterly devoid of merit, and it illustrates how far transgressors of our criminal law have been encouraged by decisions elsewhere to reach, at State expense, for any possible straw that might relieve them of the requirement of paying the penalty for their offenses against honest citizens, in this instance the owner of a food market.

The second contention insisted upon by appellant was that his court-appointed counsel was inept (nearly all lawyers are now considered incompetent by those accused of crime, except those who keep the defendants' "feet upon the bricks"). Appellant did not complain to the trial court of the conduct of his counsel; hence, under our previous decisions, he has no just complaint here. *Brown v. State,* 237 Md. 492; *Stevens v. State,* 230 Md. 47. In addition, an examination of the record shows affirmatively that the defense was vigorously advocated; appellant's counsel did all that any lawyer reasonably could have been expected to do in his behalf. Appellant was convicted, as we shall point out below, by the overpowering strength of the State's evidence.

Appellant also contends that an oral confession made by him to the police was improperly admitted into evidence. This claim, like the others, is lacking in substance. He was arrested on

August 2, 1964, under the authority of an arrest warrant issued on July 13th, the validity of which is not challenged. He was questioned on the same day by Sgt. Tabeling, in the presence of one other officer, from 2:05 p.m. until 4:49 p.m., when he made the statement. Sgt. Tabeling testified that no threats, force, promises, or inducements of any kind were used to obtain the confession, and it was given freely and voluntarily by appellant, and, at no time did he request counsel. No testimony was offered to the contrary and no impropriety was leveled against the officers present during appellant's interrogation, even though he testified in his own behalf; he merely denied that he had made the statement. No citation of authority is necessary to show that a confession made under the above circumstances is admissible (if believed by the trial judge to have been made) as evidence in this State. (What we say below discloses that the trial court did not have to rely upon the confession to support the conviction.)

This brings us to appellant's final claim of error; namely, the insufficiency of the evidence to support his conviction, which has practically become a routine claim of indigent defendants in present-day appeals in this jurisdiction. The co-owner of a food market testified that three men, one of whom was the appellant, entered his store, and, holding their hands inside their shirts, they announced in loud voices: "This is a hold-up." He stated that appellant, who had been a former customer of the store, came behind the counter and helped empty the cash register, besides helping himself to some bottles of whiskey. He also took the owner's wallet. All told, the robbers obtained about $625. This testimony was corroborated by the other co-owner of the store and a clerk, and, in addition, was corroborated, in substantial part, by another clerk.

Appellant took the stand and stated that he had been drinking heavily and was feeling his "wheaties." He went into the store to buy some fruit juice and Alka Seltzer because the drinking had upset his stomach. While he was in the store, two men came in and committed the robbery, and, as the owner was excited on account of it, appellant took a couple of bottles of whiskey from the shelf, for which he did not pay. He also did not pay for the fruit juice and didn't remember what happened

to it. About four minutes after the departure of the two robbers, he left the store. He had a formidable record of previous convictions, which, insofar as the question of guilt was concerned, was only admissible to bear upon his credibility as a witness. From the above, it is readily seen that the State's evidence, exclusive of the confession, was sufficient, if believed by the trial judge, to sustain the conviction. In the confession, he admitted participation in the robbery, and said his share of the loot was about $197.[1]

*Judgment and sentence affirmed.*

---

1. It is doubtful that any fairminded businessman and taxpayer begrudges an indigent accused of crime, who has some substance to his defense, a trial and appeal at the State's expense. But it is also doubtful that the same fairminded businessman and taxpayer would approve of the State's being required to pay a lawyer for a criminal —no matter how many times he takes others' property—and bear the expense of an appeal after his conviction, which has no semblance of merit in it.